UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONSTER WORLDWIDE, INC., | No. 09-CV-4542 (DAB) |
| Plaintiff, | |
| v. | |
| RBC CAPITAL MARKETS CORPORATION, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**

Sean M. Murphy (SM 8717)
Joshua R. Pater (JP 1302)
One Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 822-5219
Email: smurphy@milbank.com

*Attorneys for defendant RBC Capital Markets Corp.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.     STANDARD ON A MOTION TO DISMISS ................................................................ 4

II.    PLAINTIFF'S SECURITIES FRAUD CLAIM UNDER
SECTION 10(B) AND RULE 10B-5 SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM ......................................................................... 5

    A.  Elements of the Claims ........................................................................................ 5

    B.  Plaintiff Has Not Pleaded the Misrepresentations with Particularity ............................ 5

    C.  Plaintiff Has Not Pleaded Scienter With Particularity ................................................ 7

    D.  Plaintiff's Allegations Are Insufficient to Establish Loss Causation ......................... 10

    E.  Any Alleged Misrepresentations Were Immaterial Under
the Bespeaks Caution Doctrine .......................................................................... 11

III.   PLAINTIFF'S SECTION 12(A)(2) CLAIM SHOULD
BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................................. 12

    A.  Monster Fails to Plead its Section 12(a)(2) Claim with Particularity ......................... 13

    B.  Section 12(a)(2) Does Not Apply to Government-Issued Securities ......................... 14

    C.  There is No Section 12(a)(2) Liability for Private
Secondary Market Transactions for Which There Was
No Obligation To Deliver a Prospectus .............................................................. 15

    D.  Section 12(a)(2) Applies Only to Statements Made In
Or Relating To a Prospectus ............................................................................... 16

    E.  Any Alleged Misrepresentations Were Immaterial Under
the Bespeaks Caution Doctrine .......................................................................... 17

IV.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE
DISMISSED FOR FAILURE TO STATE A CLAIM ................................................... 18

    A.  Because Plaintiff Has Not Pleaded A Claim Under Federal Law,
There Is No Supplemental Jurisdiction Over State Law Claims ................................ 18

  B. The Common Law Fraud Claim ............................................................................. 19

    1. Elements of the Claim ............................................................................. 19

    2. Monster Has Not Pleaded its Common Law Fraud
      Claim with Particularity ....................................................................... 19

    3. Monster Fails to Plead Loss Causation ................................................ 20

  C. The Negligent Misrepresentation Claim Is Not Pleaded
    With Particularity ...................................................................................... 20

    1. Elements of the Claim ............................................................................. 20

    2. The Martin Act Preempts Plaintiff's Negligent
      Misrepresentation Claim ....................................................................... 20

    3. Because Plaintiff Does Not Plead Facts Separate
      From Its Fraud Claim, It Has Not Pleaded Negligent
      Misrepresentation Claim With Particularity ....................................... 21

  D. Plaintiff Fails to State a Contract Claim .......................................................... 22

    1. Elements of the Claim and Pleading Requirements ......................... 22

    2. Any Contract Was Not Intended for Monster's Benefit,
      Because it Expressly Omitted Monster from the Repurchase ......... 23

    3. Any Contractual Obligation, By Its Terms, Could Not
      Be Enforced Before December 2009 .................................................... 24

CONCLUSION ............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## Cases

*AIG Global Secs. Lending Corp. v. Banc of America Secs. LLC*,
 254 F. Supp. 2d 373 (S.D.N.Y. 2003) ........................................................................... 21

*Artwear, Inc. v. Hughes*, 202 A.D.2d 76 (App. Div. 1st Dep't 1994) ................................. 23, 24

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................... 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................ 4

*BDG Oceanside, LLC v. RAD Terminal Corp.*, 14 A.D.3d 472, N.Y.S.2d 388,
 (App. Div. 2d Dep't 2005) ........................................................................................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 4

*Bondi v. Banc of Am. Corp. (In re Parmalat Secs. Litig.)*,
 479 F. Supp. 2d 332 (S.D.N.Y. 2007) ........................................................................... 21

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) .................................................. 25

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ............................................................. 10

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. J.P. Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009) ................................................................................. 5, 7, 8

*Engler v. Cendant Corp.*, 434 F. Supp. 2d 119 (E.D.N.Y. 2006) ............................................. 21

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
 375 F.3d 168 (2d Cir. 2004) ................................................................................... 4, 19

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38 (1985) ......................... 23

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ............................................... 4, 8, 9

*Gotham Holdings, LP v. Health Grades, Inc.*,
 534 F. Supp. 2d 442 (S.D.N.Y. 2008) ........................................................................... 16

*Gurary v. Winehouse*, 235 F.3d 792 (2d Cir. 2000) ................................................................ 7

*Halperin v. eBanker USA.COM*, 295 F.3d 352 (2d Cir. 2002) ................................................. 11

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000) ................................. 20

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
 456 F. Supp. 2d 576 (S.D.N.Y. 2006) ........................................................................... 13

*In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........................... 4

*In re Cosi, Inc. Secs. Litig.*, 379 F. Supp. 2d 580 (S.D.N.Y. 2005) ........................................... 16

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................... 4

*In re Marsh & McLennan Cos. Secs. Litig.*,
 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ....................................................................... 20, 21

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
 434 F. Supp. 2d 233 (S.D.N.Y. 2006) ........................................................................... 13

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...................................................................... 9

*King v. Crossland Savs. Bank*, 111 F.3d 251 (2d Cir. 1997 ..................................................... 20

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)..................................................... 10

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991)............................................................ 19

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004)...................................................... 18

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004)............................................. 17

*Port Chester Elec. Constr. Co. v. Atlas*,
    40 N.Y.2d 652, 357 N.E.2d 983, N.Y.S.2d 327 (N.Y. 1976) ............................................. 22

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................................... 13, 21

*Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478 (2007) ............................................................ 19

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ....................................................................... 3, 9

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972).......................................................................... 7

*Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y. 1997)................................................................ 21

*Strauss v. Belle Realty Co.*, 98 A.D.2d 424,
    N.Y.S.2d 948, (App. Div. 2d Dep't 1983)........................................................................ 22

*Synovus Bank v. Valley Nat'l Bank*, 487 F. Supp. 2d 360 (S.D.N.Y. 2007).............................. 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...................................... 7, 8, 9

*Trinity Bui v. Indus. Enters. of Am.*, 594 F. Supp. 2d 364 (S.D.N.Y. 2009) ............................. 10

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005)............................................................................... 16

**Statutes**

15 U.S.C. § 77c(a)(2).............................................................................................................. 14

15 U.S.C. § 77l(a)(2) ................................................................................................ 12, 14, 16, 17

15 U.S.C. § 78u-4 (the PSLRA)........................................................................................... 4, 8, 9

15 U.S.C. § 78u-4(b)(1)............................................................................................................ 5

15 U.S.C. § 78u-4(b)(2)............................................................................................................ 8

15 U.S.C. § 78u-4(b)(4).......................................................................................................... 10

28 U.S.C. § 1367 ................................................................................................................... 18

28 U.S.C. § 1367(c)(3) ........................................................................................................... 18

N.Y. Gen. Bus. L., Art. 23-A .................................................................................................. 20

Securities Act of 1933 ...................................................................................................... passim

Securities Exchange Act of 1934 ....................................................................................... passim

**Rules**

Federal Rule of Civil Procedure 12.................................................................................. 1, 18, 25

Federal Rule of Civil Procedure 15(a)(2) ................................................................................ 25

Federal Rule of Civil Procedure 9(b) ................................................................................. passim

SEC Rule 10b-5....................................................................................................................... 3

Defendant RBC Capital Markets Corp. ("RBCCM") moves to dismiss the Second Amended Complaint of Monster Worldwide, Inc. ("Monster"), dated June 12, 2009 (the "Second Amended Complaint" or "SAC"), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

## PRELIMINARY STATEMENT

This case arises out of Monster's purchase of auction rate securities from RBCCM in 2007 and early 2008, prior to the industry-wide auction failures in February 2008. Monster alleges that RBCCM misrepresented the nature of the auction rate securities, and the liquidity risks associated with the purchases. Monster seeks to rescind its transactions on the basis of a purported oral promise by an RBCCM salesman that RBCCM would always repurchase $66 million in securities from Monster at par. SAC, ¶ 26.

At its core this case involves an allegation that RBCCM defrauded Monster in the sales of securities. Yet, there are virtually no particularized factual allegations that would support such a claim, and many of the legal elements of Monster's claims are entirely lacking. Despite the fact that this case turns on whether RBCCM made specific misrepresentations to Monster about the securities it purchased, the overwhelming majority of the 129 paragraphs in the Complaint say nothing about RBCCM's interactions with Monster. Monster is virtually silent about what RBCCM is alleged to have said, or not said, and how such conduct was fraudulent. Rather, the bulk of the Complaint recites generic allegations regarding, for example, the functioning of the auction rate securities market (*id.*, ¶¶ 8-21) and the terms of RBCCM's settlements with regulators (*id.*, ¶¶ 58-87).

The Complaint should be dismissed with prejudice for the following reasons:

(1)    Monster's Section 10(b) claim should be dismissed because Monster: (a) does not identify with particularity any misrepresentations or omissions, (b) fails to allege scienter, (c) fails to establish loss causation, and (d) any misrepresentations were immaterial under the bespeaks caution doctrine.

(2)    Monster's Section 12(a)(2) claim should be dismissed because: (a) it is not pleaded with particularity, (b) it does not apply to government-issued securities such as Monster's, (c) it does not apply to private transactions such as those in which Monster bought the securities, (d) Monster does not allege misrepresentations made in or relating to a prospectus, and (e) any misrepresentations were immaterial under the bespeaks caution doctrine.

(3)    Monster's state law claims all should be dismissed because: (a) Monster's fraud claim is not pleaded with particularity, (b) Monster fails to establish loss causation, (c) Monster's negligent misrepresentation claim is preempted by New York state law, (d) Monster's negligent misrepresentation claim is not pleaded with particularity, (e) any contracts expressly omitted Monster from their scope, and (f) any contractual obligation, by its terms, could not be enforced before December 2009.

## FACTUAL BACKGROUND

Auction rate securities ("ARS") are long-term debt instruments with a variable interest rate that is set in periodic Dutch auctions. *Id.*, ¶¶ 8, 11. In ARS auctions, the interest rate is set at the lowest rate at which all available securities can be sold, which is called the clearing rate. *Id.*, ¶ 11. If there are insufficient bids to purchase available ARS, the auction fails, and the interest rate paid to ARS holders is set at the maximum rate, as defined in that security's Official Statement. *Id.*, ¶ 12.

In February 2008, as a result of distress in the global credit markets, the ARS market suffered an unprecedented dislocation, resulting in many customers of RBCCM and other broker-dealers being unable to sell their securities at auction due to widespread auction failures. *Id.*, ¶ 23-24. Following investigations by the New York Attorney

General and other regulators, RBCCM entered into an Assurance of Discontinuance with the New York Attorney General (the "NYAG Assurance") and a Consent to an entry of a judgment filed by the Securities and Exchange Commission (the "SEC Consent"), relating to RBCCM's sales of auction rate securities. *Id.*, ¶¶ 58, 76, 83.

Although the NYAG Assurance and the SEC Consent each required RBCCM to repurchase securities from individual persons and other smaller investors (the "Retail Investors"), neither the NYAG Assurance nor the SEC Consent required RBCCM to repurchase securities from larger investors (the "Institutional Investors"). *Id.*, ¶¶ 69, 75. Monster acknowledges that it is an Institutional Investor for purposes of both the NYAG Assurance and the SEC Consent. *Id.*, ¶¶ 120, 126. As noted in further detail below (pp. 22-25), RBCCM has no obligation under its regulatory settlements to repurchase auction rate securities from Institutional Investors, such as Monster. *Id.*, ¶¶ 121, 127; NYAG Assurance, ¶¶ 35-37; SEC Consent, ¶ 3(VII).[1]

Monster pleads six claims in its Second Amended Complaint: (1) violation of Section 12(a)(2) of the Securities Act of 1933; (2) violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; (3) negligent misrepresentation; (4) common law fraud; (5) breach of contract (relating to the SEC Consent); and (6) breach of contract (relating to the NYAG Assurance).

---

[1] Copies of the NYAG Assurance and the SEC Consent are attached as Exhibits A and B, respectively, to the Declaration of Sean M. Murphy, dated June 17, 2009 (the "Murphy Declaration"). These materials are appropriate for consideration on a motion to dismiss, as they are integral to the Second Amended Complaint, *e.g.*, because two of the claims made by Monster are made to enforce its purported rights under those documents. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

<u>**ARGUMENT**</u>

**I.    STANDARD ON A MOTION TO DISMISS**

In deciding a motion to dismiss, a court must accept as true well-pleaded allegations in a complaint. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). This Court, however, "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001). In addition, the Court need not credit factual assertions or characterizations that are refuted by the objective record. *In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004). The law no longer requires a moving defendant to show that the plaintiff can prove "no set of facts" entitling it to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). Instead, a plaintiff must allege facts that render their claim not merely "conceivable," but truly "plausible." *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (confirming that *Twombly* applies to "all civil actions").

To satisfy the Rule 9(b) pleading requirements, a fraud claim alleging material misstatements or omissions must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of NY*, 375 F.3d 168, 187 (2d Cir. 2004). A plaintiff pleading securities fraud claims also must meet the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA requires that a complaint specify each allegedly misleading statement and why it is misleading; if an allegation is made on information and belief, the complaint must also state with particularity all facts on which the belief is formed. 15 U.S.C. § 78u-4(b)(1).

## II. PLAINTIFF'S SECURITIES FRAUD CLAIM UNDER SECTION 10(B) AND RULE 10B-5 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Monster asserts a violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Count 2). Because Monster fails to meet the relevant pleading standards, this claim should be dismissed.

### A. Elements of the Claims

To state a claim under Section 10(b), and Rule 10b-5, a plaintiff must allege that the defendant "made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. J.P. Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("*ECA*").

### B. Plaintiff Has Not Pleaded the Misrepresentations with Particularity

Rule 9(b) applies to fraud claims under Section 10(b). *ATSI*, 493 F.3d at 99. To meet Rule 9(b)'s pleading requirements, Monster must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* It is not enough to make conclusory allegations or allegations unsupported by factual

assertions. *Id.* In its Second Amended Complaint, Monster gives almost none of the required detail regarding the allegedly fraudulent misrepresentations and omissions. Instead, Monster asks this Court to *infer* that a fraud took place based solely on its generic say-so.

Monster alleges that certain representations were made by John Piemonte, an RBCCM salesman (*e.g.*, SAC, ¶ 26), but elsewhere it refers broadly to "RBC's assurances" and "RBC's representations" without clarification as to who made such assurances and representations (*id.*, ¶¶ 43, 50). Monster does not even attempt to specify particular dates of misrepresentations or numbers of times such representations were made. *Id.*, ¶ 41 ("At some point during the period October 2007 and December 2007 . . . . in at least one telephone call . . . ."); ¶ 28 ("At all times during which RBC sold SLARS to Plaintiff (May 2, 2007 through January 16, 2008), RBC touted the reliable short-term liquidity . . . ."). Monster does not state where any representations were made.

As for the content of the alleged misrepresentations, there is no specificity provided. Monster's allegations boil down to the claim that Mr. Piemonte stated that "RBC's SLARS remained safe and liquid," and that RBCCM would provide liquidity if any auction failed. SAC, ¶ 42.[2] This, too, is insufficient. Monster has not pleaded the necessary detail regarding such statements, nor how they were fraudulent. In addition,

---

[2] Although the Court must accept the complaint's factual allegation at face value, RBCCM notes that this scant summary of what its salesman, John Piemonte, supposedly said is highly implausible. Monster owned over $66 million in ARS in February 2008 (SAC ¶ 55). It is difficult to believe that a sophisticated institutional investor such as Monster would rely on oral assurances from a salesman regarding a commitment to repurchase that amount of securities, without seeking any assurances from senior RBCCM management, insisting on any written documentation of the agreement, and without creating any email or paper trail indicating such a commitment existed.

Monster is alleging a failure to carry out a promise made by RBCCM. In order to state a securities fraud claim (as a opposed to a contract claim) for such a promise, Monster must allege that, when the agreement was made, RBCCM secretly intended not to perform or knew that it could not perform. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Monster has pleaded neither of these things, much less with the requisite particularity.

Monster's generalized complaint highlights many of the policies underlying Rule 9(b). Because "[i]t is a serious matter to charge a person with fraud" an allegation involving some degree of moral turpitude "no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically." *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972). RBCCM should not be put to the burden and expense of defending against fraud allegations unless Monster and its attorney can, consistent with their obligations under Rule 11, state with the particularity required by Rule 9(b) exactly what was said, when it was said, and why it was fraudulent.

Because Monster has failed to meet the heightened pleading standard, its Section 10(b) claim should be dismissed.

### C. Plaintiff Has Not Pleaded Scienter With Particularity

Section 10(b) and Rule 10b-5 require proof that the defendant acted with scienter — an intention to deceive, manipulate, or defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). A plaintiff must allege and show either intent or recklessness. *ECA*, 553 F.3d at 198. "Recklessness" is not mere negligence, but instead it is "at the least, . . . an extreme departure from the standards of ordinary care . . .

to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (quotation marks omitted).

Under the PSLRA, a complaint must state particular facts giving rise to a strong inference the defendant acted with the required state of mind to avoid dismissal. 15 U.S.C. § 78u-4(b)(2). "To qualify as 'strong' . . ., an inference of scienter must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The inference of scienter need not be irrefutable, but it must be strong in light of other explanations. *Id.* at 324; *see also ECA*, 553 F.3d at 198.

In the Second Circuit, scienter can be established "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Speculation and conclusory allegations, however, will not support a strong inference of fraudulent intent. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 169 (2d Cir. 2000).

Monster's allegations of scienter fail to meet this heightened pleading standard. Monster makes certain boilerplate allegations regarding financial motivation, but nothing that remotely rises to a strong inference of scienter. *See, e.g.*, SAC, ¶ 38 (referring to defendant's "lucrative SLARS business"). For example, Monster alleges that RBCCM "knew or consciously and recklessly disregarded . . . that it lacked the liquidity necessary to prevent auction failures in the $20.2 billion in SLARS for which it acted as broker-dealer." *Id.*, ¶ 44. Monster also alleges that RBCCM "knew or consciously and

recklessly disregarded . . . [that] the SLARS market would collapse entirely without the broker-dealers continuing their ever-increasing purchases." *Id.*, ¶ 49. Crucially, however, Monster does not allege that RBCCM actually knew or expected that the ARS market actually *would* fail, and therefore Monster has not alleged scienter on the part of RBCCM.[3]

To adequately allege "strong circumstantial evidence of conscious misbehavior or recklessness," a plaintiff must show "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quotation marks omitted). Additionally, "the strength of the circumstantial allegations must be correspondingly greater if there is no motive." *ECA*, 553 F.3d at 198-99 (quotation marks omitted).

Here, Monster's allegations fall miserably short of the standards required to plead scienter under *Tellabs* and the PSLRA. Indeed, the allegations in the Second Amended Complaint are entirely conclusory, repeatedly invoking the phrase "knew or consciously or recklessly disregarded" to describe RBCCM's conduct. However, there are absolutely no *facts* alleged to support those conclusions. This is the rare case where plaintiff has not alleged facts giving rise to *any* inference of scienter, much less a "cogent" and

_____

[3]    Monster also alleges that RBCCM "knew or consciously and recklessly disregarded . . . that retail demand for its SLARS has plummeted resulting in a substantial imbalance with the supply of its SLARS being offered for sale . . . ." *Id.*, ¶ 48. However, Monster has not actually pleaded that RBCCM misrepresented the fact that its ARS inventory was growing in late 2007. On the contrary, Monster acknowledges that it was aware of this fact. SAC, ¶ 41.

"compelling" inference as is required by *Tellabs*.[4]   Absent particularized allegations of fact to support an inference of scienter, Monster's claim under Section 10(b) must be dismissed.

### D.     Plaintiff's Allegations Are Insufficient to Establish Loss Causation

Loss causation is an element of a Section 10(b) claim.  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (noting that a plaintiff must allege that the subject of the statement or omission was the cause of the loss suffered); 15 U.S.C. § 78u-4(b)(4) (codifying the requirement of loss causation).

The Supreme Court has explained that a change in the price of a security from the date of purchase to the date of sale "may reflect, not [an] earlier representation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).  Accordingly, Monster must isolate the impact of the alleged fraud from this "tangle of factors affecting price."  *Id.*  Monster makes no attempt to do so, even though Monster concedes that the dislocation in the auction rate securities market was an industry-wide phenomenon and not one limited to customers of RBCCM. SAC, ¶ 23.  Having conceded that its loss was a result of the credit crunch and not of any statements by RBCCM, Monster has not adequately pleaded loss causation.

---

[4]      Scienter is also an element of plaintiff's common law fraud claim, which therefore should be dismissed for similar reasons. *Trinity Bui v. Indus. Enters. of Am.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing common law fraud claim for failing to plead scienter).

**E.**     **Any Alleged Misrepresentations Were Immaterial Under the Bespeaks Caution Doctrine**

Plaintiffs alleging a Section 10(b) claim must allege that the purported misrepresentations and omissions were material. *ECA*, 553 F.3d at 197. Under the bespeaks caution doctrine, certain alleged misrepresentations are immaterial as a matter of law where "it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.COM*, 295 F.3d 352, 357 (2d Cir. 2002). The key inquiry is not into the truth of the alleged misrepresentations or omissions, but whether, "considered together and in context, [they] would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Id.*

Here, Monster has failed entirely to account for the abundance of cautionary language spread throughout the official statements issued in connection with securities on which RBCCM acted as broker-dealer. For example, Monster alleges that it holds $5.5 million in securities issued by the Finance Authority of Maine with the identifier 56041WAH5 (the "Maine ARS") which it purchased from RBCCM. SAC, ¶ 55. The Official Statement for the Maine ARS makes clear that, contrary to the purported promises made by RBCCM to Monster, there is no guarantee that an investor in ARS would be able to sell the securities at par.[5] Among the disclosures made in the Official Statement were the following:

---

[5]     A copy of the Maine ARS Official Statement is attached as Exhibit C to the Murphy Declaration. Consideration of this document is appropriate, because it is one of the Official Statements referenced in the Second Amended Complaint. SAC, ¶ 90.

> In any Auction, Existing Owners will be able to sell all of the Auction Rate Bonds that are the subject of submitted Sell Orders only if there are Bidders willing to purchase all those Auction Rate Bonds offered for sale in the Auction.
>
> If sufficient clearing Bids have not been made, Existing Owners that have submitted Sell Orders will not be able to sell in the Auction all, and may not be able to sell any, of the Auction Rate Bonds subject to such submitted Sell Orders. As discussed above . . ., the Designated Broker-Dealer may submit a Bid in an Auction to keep it from failing, but it is not obligated to do so. There may not always be enough Bidders to prevent an Auction from failing in the absence of the Designated Broker-Dealer bidding in the Auction for its own account or encouraging others to bid. Therefore, Auction failures are possible, especially if the Authority's credit were to deteriorate, a market disruption were to occur or if, for any reason, the Designated Broker-Dealer were unable or unwilling to bid. . . .
>
> The Designated Broker-Dealer is permitted, but not obligated, to submit Orders in Auctions for its own account either as a Bidder or an Existing Owner and routinely does so in the auction rate securities market in its sole discretion.

Maine ARS Official Statement, at 24-25. Accordingly, even if Monster had met the other requirements for pleading a Section 10(b) claim — which it has not — its claim would still fail because no reasonable investor would be misled about the nature and risk of the offered securities in light of the disclosures made in the offering documentation.

## III. PLAINTIFF'S SECTION 12(A)(2) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Monster also asserts a violation of Section 12(a)(2) of the Securities Act of 1933 15 U.S.C. § 77l(a)(2) (Count 1). This claim should be dismissed because (1) it is not pleaded with particularity, (2) Section 12(a)(2) expressly exempts government-issued securities from its scope, (3) ARS sold in auctions are private transactions for which no prospectus is required, (4) Monster has not alleged that any misrepresentations were

made by RBCCM in or relating to a prospectus, and (5) the alleged misrepresentations were immaterial under the bespeaks caution doctrine.

## A. Monster Fails to Plead its Section 12(a)(2) Claim with Particularity

Although fraud is not an element of a Section 12(a)(2) claim, courts have held that where such claims are predicated on fraud, Rule 9(b)'s heightened pleading standard applies. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (holding that "Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud," and concluding that plaintiffs' Section 11 claims sounded in fraud where the complaint alleged that a registration statement was "inaccurate and misleading," contained "untrue statements of material facts," and that "materially false and misleading written statements were issued").

Courts have applied the Rule 9(b) standard where the allegations underpinning a Section 12(a)(2) claim are "inextricably intertwined" with the allegations underpinning a fraud claim in the same complaint. *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 239 (S.D.N.Y. 2006) (applying Rule 9(b) to Section 12(a)(2) claim and holding that allegations that defendants "failed to disclose" and "omitted" certain facts sounded in fraud). Here, Monster's Section 12(a)(2) claim is based on the same allegations as its fraud claims, *e.g.*, the allegation that "RBC made untrue statements of material fact and omitted to state material facts necessary in order to make other

statements . . . not misleading." SAC, ¶ 96.  Accordingly, the Section 12 claim must be pleaded with particularity under Rule 9(b).

For the reasons stated above in relation to Monster's Section 10(b) claim (*see* pp. 7-8, *supra*), Monster has failed to plead any misrepresentations or omissions with particularity.  Monster does not properly specify the statements or omissions that underlie its complaint; fails to specify who made such statements; fails to state when or where such conduct occurred; and fails to explain what made such statements or omission fraudulent.  Therefore, its Section 12 claim should also be dismissed.

## B.  Section 12(a)(2) Does Not Apply to Government-Issued Securities

Section 12(a)(2) imposes liability on "[a]ny person who . . . offers or sells a security (whether or not exempted by the provisions of section 77c of this title, ***other than paragraphs (2)*** and (14) ***of subsection (a)*** of said section), . . . by means of a prospectus . . . ."  15 U.S.C. § 77l(a)(2) (emphasis added).  According to 15 U.S.C. § 77c(a)(2), "[a]ny security issued or guaranteed by . . . any State of the United States, or by any political subdivision of a State . . . or by ***any public instrumentality*** of one or more States," is exempted from the coverage of the Securities Act.  15 U.S.C. § 77c(a)(2) (emphasis added); *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 571 (1995) ("By its terms, § 12(2) [now Section 12(a)(2)] exempts from its coverage prospectuses relating to the sales of government-issued securities.")

Monster acknowledges that it bought student loan ARS issued by public instrumentalities.  SAC, ¶ 55 (listing securities issued by, *e.g.*, the "State of North

Carolina Education Assistance Authority"). Indeed, the Maine ARS Official Statement notes on its cover page that it relates to securities "issued by the Finance Authority of Maine . . ., a body corporate and politic and *a public instrumentality* of the State of Maine . . . ." Murphy Decl., Ex. C, at 1. Accordingly, Monster's Section 12 claim should be dismissed.

### C. There is No Section 12(a)(2) Liability for Private Secondary Market Transactions for Which There Was No Obligation To Deliver a Prospectus

RBCCM was under no obligation to deliver an Official Statement to Monster in connection with Monster's purchases of ARS, which Monster apparently concedes by failing to plead anything to the contrary. According to the Second Amended Complaint, each of the ARS purchased by Monster was purchased not in the initial issue, but rather subsequent to that time in auctions that followed the initial offerings. *Id.*, ¶ 55. Monster acknowledges that ARS purchased in auction were purchased in the "after-market" — *i.e.*, in private secondary market transactions, not initial public offerings. *Id.*, ¶ 17. Because Monster has not pleaded (and cannot plead) that RBCCM had an obligation to deliver a prospectus in connection with Monster's secondary market purchases, the Second Amended Complaint has failed to plead a Section 12 claim as a matter of law.

In *Gustafson*, the Supreme Court held that Section 12(a)(2) does not apply to private sales of securities. The Second Circuit has interpreted *Gustafson* to preclude Section 12(a)(2) claims by investors, such as Monster, who purchased securities in a secondary market transaction. "[A] Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction, whether primary or

secondary." *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005) (citing *Gustafson*, 513 U.S. at 584). "[B]ecause the plaintiffs have not alleged that they purchased their shares in the IPO, they have failed to allege that they have standing to bring a claim under § 12(a)(2)." *In re Cosi, Inc. Secs. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (citing cases). Under *Gustafson*, Monster has failed to plead a Section 12 claim, because it has acknowledged that it did not purchase the ARS in an initial public offering. SAC, ¶ 55 (alleging that each "Purchase Date" followed the "Issue Date").

Additionally, Monster has not pleaded that RBCCM was under an obligation to deliver a prospectus, and Section 12(a)(2) liability therefore cannot attach. *Yung*, 432 F.3d at 149 (dismissing a Section 12(a)(2) claim where there was no obligation to deliver a prospectus); *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008) (same).[6]

### D. Section 12(a)(2) Applies Only to Statements Made In Or Relating To a Prospectus

To plead a violation of Section 12(a)(2), Monster must allege that RBCCM made a misstatement "by means of a prospectus or oral communication." 15 U.S.C. § 77l(a)(2). Monster never alleges that it received an Official Statement prepared by RBCCM — only that "RBC offered those SLARS to Plaintiff and other public investors through means

---

[6]    Even if Monster had alleged that it had in fact received an Official Statement for certain or all of its ARS purchases from RBCCM, that would be immaterial to whether Monster has stated a claim under Section 12(a)(2). An investor who purchases securities in the secondary market and fortuitously receives a prospectus — even one who reads and relies upon the prospectus — still does not purchase the securities "by means of a prospectus" and therefore does not state a claim under Section 12(a)(2). *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008) (holding that inclusion of the prospectus in sales offering documents was irrelevant because plaintiff had not alleged an obligation to deliver it, and the allegation that securities were allegedly sold "pursuant to" the prospectus was irrelevant).

and instruments of interstate commerce, and by means of prospectuses, known as Forms

G-36 — Official Statements, and by means of oral communications." SAC, ¶ 90.

Monster then pleads that the alleged misrepresentations made to it were made "[i]n oral

communications to Plaintiff related to the offerings of those SLARS . . . ." *Id.*, ¶¶ 92, 96.

*Gustafson* held that the only oral communications actionable under Section

12(a)(2) are "oral communications that relate to a prospectus." *Yung*, 432 F.3d at 147 n.5

(citing *Gustafson*, 513 U.S. at 567-68). Monster has pleaded only oral misrepresentations

"related to the offerings" of ARS. SAC, ¶ 92, 96. Monster has not pleaded any oral

misrepresentations related to any prospectus (let alone pleaded them with specificity).

Because Monster has not alleged that any misrepresentations were made by RBCCM in

or relating to a prospectus, it has failed to plead a Section 12 claim. *Gotham Holdings*,

534 F. Supp. 2d at 444-45 (dismissing a Section 12(a)(2) claim where "the

misrepresentations on which plaintiffs sue are *not* contained in the prospectus or in oral

statements about the prospectus") (emphasis in original).

### E. Any Alleged Misrepresentations Were Immaterial Under the Bespeaks Caution Doctrine

Monster's Section 12 claim also fails under the "bespeaks caution" doctrine. "A

defendant may not be liable under § 12(a)(2) for misrepresentations in a prospectus if the

alleged misrepresentations were sufficiently balanced by cautionary language within the

same prospectus such that no reasonable investor would be misled about the nature and

risk of the offered security." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d

Cir. 2004). As noted above in connection with the Section 10(b) claim (*see* pp. 11-12,

*supra*), Monster has failed entirely to account for the abundance of cautionary language spread throughout the official statements.  Therefore, even if Monster had met the other requirements for pleading a Section 12 claim, which it has not, its claim would fail because no reasonable investor would be misled about the nature and risk of the offered security in light of the disclosures made in the offering documentation for such securities.

## IV.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Monster asserts state law claims for common law fraud (Count 4), negligent misrepresentation (Count 3), and breaches of contract (Counts 5 and 6).  Each of these claims should be dismissed.

### A.    Because Plaintiff Has Not Pleaded A Claim Under Federal Law, There Is No Supplemental Jurisdiction Over State Law Claims

Jurisdiction over the state law claims is predicated on 28 U.S.C. § 1367.  SAC, ¶ 3.  However, to the extent that Monster has not successfully pleaded a claim under federal law (for the reasons discussed above), there is no supplemental jurisdiction over the state law claims, and those should be dismissed under Federal Rule of Civil Procedure 12(b)(1).  28 U.S.C. § 1367(c)(3); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed before trial . . ., the state claims should be dismissed as well.'") (citation and emphasis omitted).  In the alternative, Monster's Second Amended Complaint fails to state a cause of action under each of the state law claims, as discussed below.

### B.    The Common Law Fraud Claim

#### 1.    Elements of the Claim

To state a claim for common law fraud under New York law, a plaintiff must allege that "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007) (citation and quotation marks omitted). "Because these elements [of common law fraud under New York law] are substantially identical to those governing § 10(b), the identical analysis applies . . . ." *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991)..

#### 2.    Monster Has Not Pleaded its Common Law Fraud Claim with Particularity

As stated above, Monster has failed to properly specify the statements or omissions that underlie its complaint; has failed to specify who made such statements; has failed to state when or where such conduct occurred; and has failed to explain what made such statements or omission fraudulent. *See* pp. 5-7, *supra*; *Eternity Global*, 375 F.3d at 186-87 (applying Rule 9(b) to a state law fraud claim). Accordingly, Monster has failed to plead its common law fraud claim with particularity, and it should be dismissed.

### 3. Monster Fails to Plead Loss Causation

Like a federal securities fraud claim, a common law fraud claim under New York law requires proof of loss causation. As discussed above, Monster has failed to plead loss causation with respect to its fraud claims. *See* p. 10, *supra*.

### C. The Negligent Misrepresentation Claim Is Not Pleaded With Particularity

#### 1. Elements of the Claim

The elements of a negligent misrepresentation claim under New York law are:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citing *King v. Crossland Savs. Bank*, 111 F.3d 251, 257-58 (2d Cir. 1997)).

#### 2. The Martin Act Preempts Plaintiff's Negligent Misrepresentation Claim

"[U]nder New York law, negligent misrepresentation claims made in connection with the purchase or sale of securities are preempted by the Martin Act [N.Y. GEN. BUS. L., Art. 23-A] . . . ." *In re Marsh & McLennan Cos. Secs. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006) (citing cases for this "majority position"). Here, the alleged negligent misrepresentation claim is in connection with the purchase of securities, namely, ARS. SAC, ¶ 111. Accordingly, this claim must be dismissed.

### 3. Because Plaintiff Does Not Plead Facts Separate From Its Fraud Claim, It Has Not Pleaded Negligent Misrepresentation Claim With Particularity

In the alternative, although fraud is not an element of a negligent misrepresentation claim, most counts in this District hold that the heightened pleading standard of Rule 9(b) applies to negligent misrepresentation claims such as Monster's. *E.g.*, *In re Marsh & McLennan*, *supra*, 501 F. Supp. 2d at 495 (dismissing a negligent misrepresentation claim for failing to meet the Rule 9(b) standard); *AIG Global Secs. Lending Corp. v. Banc of America Secs. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) (same); *Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y. 1997) (same); *but see Engler v. Cendant Corp.,* 434 F. Supp. 2d 119, 132 (E.D.N.Y. 2006) (declining to apply Rule 9(b)). This is especially true given that Monster's negligent misrepresentation claim is based on the same facts as its fraud claim. *Bondi v. Banc of Am. Corp. (In re Parmalat Secs. Litig.)*, 479 F. Supp. 2d 332, 340 n.30 (S.D.N.Y. 2007) ("The Bank's claim for negligent misrepresentation 'realleges and incorporates by reference' all prior allegations, including those alleging fraud. It thus alleges intentional, not negligent, misrepresentation and is subject to Rule 9(b).") (internal citation omitted; citing *Rombach*, 355 F.3d at 171-72).

Monster merely "restates and realleges" its previous allegations in making its negligent misrepresentation claim, and it makes no further allegations to distinguish this cause of action from its fraud claims. As explained in more detail above (*see* pp. 5-7, *supra*), Monster has failed to properly specify the statements or omissions that underlie its complaint; has failed to specify who made such statements; has failed to state when or

where such conduct occurred; and has failed to explain what made such statements or omission misleading. Accordingly, this claim should be dismissed.

### D. Plaintiff Fails to State a Contract Claim

#### 1. Elements of the Claim and Pleading Requirements

Monster alleges that the NYAG Assurance and the SEC Consent each constitute a contract of which Monster is an intended third-party beneficiary. New York state law regarding third-party beneficiaries to contracts provides as follows:

> For a third-party beneficiary to succeed on a breach of contract claim under New York law, the party must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost. While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract.

*Synovus Bank v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007) (internal citation and quotation marks omitted; *citing BDG Oceanside, LLC v. RAD Terminal Corp.*, 14 A.D.3d 472, 787 N.Y.S.2d 388, 390 (App. Div. 2d Dep't 2005); *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y.S.2d 948, 951 (App. Div. 2d Dep't 1983); *Port Chester Elec. Constr. Co. v. Atlas*, 40 N.Y.2d 652, 357 N.E.2d 983, 389 N.Y.S.2d 327 (N.Y. 1976)).

Before a third party can enforce a contract, "it must appear 'that no one other than the third party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third party.'"

*Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 82 (App. Div. 1st Dep't 1994) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)).  Here, neither option applies, because the SEC and the NYAG can enforce their agreements with RBCCM, and neither the SEC Consent nor the NYAG Assurance evidences any intent whatsoever to permit third-party enforcement.  Indeed, it is not credible to assume the SEC or the NYAG expected or intended private parties to enforce such documents.

> **2.    Any Contract Was Not Intended for Monster's Benefit, Because it Expressly Omitted Monster from the Repurchase**

As Monster acknowledges, RBCCM entered into settlement agreements with the SEC and the NYAG that principally required RBCCM to do two things: (1) offer to repurchase ARS from an estimated 2,000 Retail Investors, and (2) to "use its best efforts to provide liquidity by the end of 2009" to Institutional Investors in auction rate securities.  SAC, ¶¶ 69, 75.  That is, the regulatory settlements expressly define a category of Retail Investors to whom RBCCM was obligated to offer to repurchase auction rate securities — and *Monster admits that it is not among that class of Retail Investors*.  *Id.*, ¶¶ 120, 126.  Monster nonetheless asserts two claims premised on the notion that Monster is "entitled to specific performance" of a nonexistent obligation.  *Id.*, ¶¶ 122, 128.  But Monster cannot avoid the simple fact that RBCCM's obligation to Institutional Investors such as Monster simply does not include the obligation to repurchase auction rate securities — rather, RBCCM is to use its best efforts to facilitate liquidity solutions.  *Id.*, ¶¶ 121, 127; NYAG Assurance, ¶¶ 35-37; SEC Consent, ¶ 3(VII).  Indeed, the SEC Consent explicitly states that "Defendant [RBCCM] is under no

obligation to offer to purchase Eligible ARS from Institutional Customers." SEC Consent, ¶ 3(VII).

Had they wished to do so, the SEC and the NYAG obviously could have sought to require RBCCM to repurchase ARS from Institutional Investors such as Monster. Indeed, the SEC and the NYAG did require one of RBCCM's competitors to do so, as Monster well knows, because it has publicly disclosed that it accepted a repurchase in conjunction with that settlement.[7] By sharp contrast, the NYAG Assurance and the SEC Consent at issue here did not purport to require RBCCM to buy ARS from Monster or other Institutional Investors, and accordingly there is no repurchase obligation for Monster to enforce against RBCCM.

Because the SEC or NYAG can recover if RBCCM were to breach the agreements, and because the agreements do not otherwise clearly evidence an intent to permit enforcement by Institutional Investors, Monster's contract claims should be dismissed. *Artwear*, 202 A.D.2d at 82.

### 3. Any Contractual Obligation, By Its Terms, Could Not Be Enforced Before December 2009

Finally, even if Monster's reading of RBCCM's "best efforts" obligation were correct, the actual terms of RBCCM's obligations to its institutional investors is to "use

---

[7] Form 10-Q, filed by Monster Worldwide Inc. with the SEC on May 6, 2009, at 25 ("Of the Company's auction rate securities portfolio, approximately $8.3 million was marketed and sold by UBS AG and its affiliates (collectively, 'UBS'). On November 11, 2008, the Company accepted a settlement with UBS pursuant to which UBS issued to us Series C-2 Auction Rate Securities Rights (the 'ARS Rights'). The ARS Rights provide us the right to receive the par value of our UBS-brokered ARS plus accrued but unpaid interest. The settlement provides that the Company may require UBS to purchase its UBS-brokered ARS at par value at any time between June 30, 2010 and July 2, 2012.") (available at http://sec.gov/Archives/edgar/data/1020416/000136231009006584/c84823e10vq.htm).

its best efforts to provide liquidity *by the end of 2009.*"  SAC, ¶ 75.  That is, even if RBCCM were obligated to repurchase Monster's securities or otherwise take some action intended to benefit Monster, any effort to enforce such a hypothetical obligation could not have been breached before the end of 2009.  For this reason, Monster's contract claims should be dismissed.

## CONCLUSION

For the reasons stated above, this Court should dismiss all claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).[8]

Dated:  July 17, 2009
        New York, New York

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By:   /s/ Sean M. Murphy
Sean M. Murphy (SM 8717)
Joshua R. Pater (JP 1302)
One Chase Manhattan Plaza
New York, NY  10005
Telephone: (212) 530-5000
Facsimile:  (212) 822-5219
Email:       smurphy@milbank.com

*Attorneys for defendant RBC Capital Markets Corp.*

---

[8]     Although leave to amend shall be "freely give[n] when justice so requires" under Rule 15(a)(2), Monster has already had its third proverbial bite at the apple, having twice amended its complaint already.  Given the futility of amendment, the Court should consider dismissing with prejudice and denying plaintiff leave to file a Third Amended Complaint.  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 71-72 (2d Cir. 1996) (collecting cases and noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim").