# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

RBC CAPITAL MARKETS CORPORATION,

    Defendant.

Civil Action No.

**CONSENT OF DEFENDANT RBC CAPITAL MARKETS CORPORATION**

1. Defendant RBC Capital Markets Corporation ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over it and over the subject matter of this action.

2. Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

    I.    permanently restrains and enjoins Defendant from violations of Section 15(c) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78o(c)]; and

    II.    upon motion by the Securities and Exchange Commission ("Commission") and order of the Court orders Defendant to pay a

civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3. Defendant agrees that it shall comply with the following undertakings:

   I. Key Definitions.

      A. Eligible Auction Rate Securities. As used in this Consent, "Eligible ARS" shall mean auction rate securities that were purchased from or through Defendant on or before February 11, 2008 into an account maintained in the custody of RBC at the time of the purchase, and that have failed at auction at least once since February 11, 2008.

      B. Eligible Customers. As used in this Consent, "Eligible Customer" shall mean:

         1. Natural persons (including their IRA accounts, testamentary trust and estate accounts, custodian UGMA and UTMA accounts, and guardianship accounts) who purchased Eligible ARS;

         2. Non-corporate trusts that purchased Eligible ARS;

         3. Nonprofit, charitable and religious organizations that purchased Eligible ARS and that had $25 million or less in assets in their accounts with RBC net of margin loans, as determined by the

SEC v. RBC Capital Markets Corp.
Consent of RBC

customer's aggregate household position(s) as of October 8, 2008; and

4. Small Businesses that purchased Eligible ARS. For purposes of this provision, "Small Businesses" shall mean customers not otherwise covered by Paragraph 3(I)(B)(3) above that had $10 million or less in assets in their accounts with RBC net of margin loans, as determined by the customer's aggregate household position(s) as of October 8, 2008. Notwithstanding any other provision, "Small Businesses" do not include broker-dealers, investment managers, banks or other financial intermediaries acting as conduits for their customers.

II. Customer Notification Procedures.

A. <u>Initial Notice</u>. No later than seven (7) business days from entry of the Judgment, Defendant shall use its best efforts to identify and provide written notice to Eligible Customers, informing them of the relevant terms of this Consent. Defendant shall also provide written notice of the relevant terms of this Consent to any Eligible Customers identified subsequent to the Initial Notice.

B.  <u>Second Notice</u>. To the extent that any Eligible Customer has not responded to Defendant's offer to purchase their Eligible ARS, Defendant shall provide any such Eligible Customer a second written notice on or before 45 days before the end of the Offer Period (defined below) informing them of the relevant terms of this Consent, notifying them of the impending expiration of the Offer Period, describing the state of the ARS market at that time for the Eligible Customer's Eligible ARS, and explaining the possible liquidity consequences of failing to sell their ARS to Defendant prior to the expiration of the Offer Period.

C.  <u>Customer Assistance Line and Internet Page</u>. No later than two (2) business days after entry of the Judgment, Defendant shall establish: 1) a dedicated toll-free telephone assistance line, with appropriate staffing, to provide information and to respond to questions concerning the terms of this Consent; and 2) a public Internet page on its corporate Web site(s), with a prominent link to that page appearing on Defendant's relevant homepage(s), to provide information concerning the terms of this Consent and, via an e-mail address or other reasonable means, to respond to questions concerning the terms of this Consent. Defendant

shall maintain the telephone assistance line and Internet page through December 31, 2009.

III. <u>Offer Period</u>. On December 1, 2008 (the "Offer Date"), Defendant offered to purchase, at par plus accrued and unpaid dividends and interest, Eligible ARS from Eligible Customers. For Eligible Customers not already notified of this offer, Defendant shall promptly notify them of the offer, but such notice shall occur not later than three (3) business days after any such customer is identified. This offer shall remain open until at least June 30, 2009 ("Offer Period"). Defendant may extend the Offer Period beyond this date.

IV. <u>Purchase Procedure</u>.

    A. <u>Acceptance Deadline</u>. Eligible Customers may accept Defendant's offer to purchase Eligible ARS by notifying Defendant at any time before 5:00 p.m., Eastern Time, June 30, 2009, or such later date and time as Defendant may extend the Offer Period.

    B. <u>Purchases Relating to Eligible Customers Who Custody Their Eligible ARS at Defendant.</u> For Eligible Customers who custodied their Eligible ARS at Defendant as of October 8, 2008, Defendant shall purchase the Eligible ARS from the Eligible Customer as soon as possible after

receiving notification of an Eligible Customer's acceptance of Defendant's purchase offer within the Offer Period, but no later than the date of the next scheduled auction rate security auction.

C. <u>Purchases Relating to Eligible Customers Who Custody Their Eligible ARS Away From Defendant</u>. For Eligible Customers who custodied their ARS away from Defendant as of October 8, 2008, if Defendant receives: (a) notification of acceptance of its purchase offer within the Offer Period; (b) assurance reasonably satisfactory to Defendant from the customer's current financial institution that the bidding rights associated with the ARS will be transferred to the Defendant; and (c) transfer of the ARS, then Defendant shall purchase the Eligible ARS as soon as reasonably practicable but no later than the date of the next scheduled auction rate security auction. Defendant shall use its best efforts to identify, contact and assist any Eligible Customer who has transferred the ARS out of Defendant's custody in returning such ARS to Defendant's custody, and shall not charge such Eligible Customer any fees relating to or in connection with the return to Defendant or custodianship by Defendant of such ARS.

V.  <u>Reimbursement for Related Loan Expenses</u>. Until such time as Defendant makes the offer to purchase Eligible ARS described above in Part III, Defendant shall make available to all Eligible Customers non-recourse loans for the full par amount of the Eligible ARS at an interest rate that shall expose the borrower to no negative carry. Such loans will become fully due and payable as soon as the proceeds of the purchase of Eligible ARS at par are credited to the Eligible Customer's account or at the time that the Eligible Customer declines Defendant's Offer. Defendant shall make best efforts to identify Eligible Customers who took out loans secured by ARS that were not successfully auctioning at the time the loan was taken out from Defendant between February 11, 2008 and June 30, 2009, or the date that Defendant purchased the Eligible ARS pursuant to this Consent, whichever comes first, and who paid interest associated with the ARS based portion of those loans in excess of the total interest and dividends received on the ARS during the duration of the loan. Defendant shall reimburse all Eligible Customers who borrowed from Defendant against their ARS holdings as described in this paragraph for the excess expense, plus reasonable interest thereon. Such reimbursement shall occur as soon as possible, but no later than 30 days after the Defendant purchased the Eligible ARS pursuant to this Consent, or no later than 30 days after a request for reimbursement of related

loan expenses from those Eligible Customers who sold their ARS holdings after February 11, 2008, to someone other than Defendant.

VI. <u>Relief for Customers Who Sold Below Par</u>. Defendant shall use its best efforts to identify any Eligible Customers who sold auction rate securities below par on or between February 11, 2008 and October 8, 2008. As soon as possible, but no later than 45 days after the identification of such Eligible Customers who sold auction rate securities below par, Defendant shall pay any such identified Eligible Customers the difference between par and the price at which the Eligible Customer sold the auction rate securities, plus reasonable interest thereon.

VII. <u>Relief Efforts for Non-Eligible Customers</u>. Defendant shall use its best efforts to provide, by December 31, 2009, all customers not covered by the provisions found in Paragraph 3(I)(B) ("Institutional Customers") that purchased Eligible ARS opportunities to liquidate their Eligible ARS, including, but not limited to, facilitating issuer redemptions, restructurings, and other reasonable means. Defendant is under no obligation to offer to purchase Eligible ARS from Institutional Customers. Prior to December 31, 2009, Defendant shall not take advantage of liquidity solutions with regard to a particular Eligible ARS in its own inventory without first making these opportunities available to

Institutional Customers that are holding the same ARS in their accounts and have placed a limit order to sell such securities at the same price or better, or otherwise have informed Defendant of their intention or willingness to sell such securities at the same price or better.

VIII. <u>Consequential Damages Claims</u>. Defendant shall consent to participate, at the Eligible Customer's election, in the special arbitration procedures announced by the Financial Industry Regulatory Authority ("FINRA") on December 16, 2008, and available on its website at http://www.finra.org/web/groups/arbitrationmediation/@arbmed/documents/arbmed/p117445.pdf, for the exclusive purpose of arbitrating any Eligible Customer's claim for consequential damages related to its investment in ARS. As described in FINRA's procedures, Defendant will pay all forum fees associated with the arbitration for Eligible Customers. Although it may defend itself against consequential damage claims, Defendant shall not contest liability related to the sale of ARS or the illiquidity of the underlying ARS position. Defendant is also prohibited from using as part of its defense any decision by the Eligible Customer not to sell the ARS position before October 8, 2008, or not to borrow money from Defendant. Customers seeking relief pursuant to the FINRA special arbitration procedures shall bear the burden

9    SEC v. RBC Capital Markets Corp.
Consent of RBC

of proving by a preponderance of the evidence the existence and amount of consequential damages suffered as a result of the illiquidity of the Eligible ARS.

IX. Other Proceedings/Relief. All customers, including but not limited to Eligible Customers who avail themselves of the relief provided pursuant to this Consent, may pursue any remedies against Defendant available under the law. However, those customers that elect to utilize the special arbitration procedures set forth in Paragraph VIII above are limited to the remedies available in that process and may not bring or pursue a claim relating to ARS in another forum.

X. Reports and Meetings.

    A. Within 45 days of the end of each month, beginning with a report covering the period beginning October 8, 2008 and ending April 30, 2009 (due on June 15, 2009) and continuing monthly, through and including a report covering the month ended December 31, 2009 (due on February 16, 2010), Defendant shall submit a written report detailing Defendant's progress with respect to its obligations pursuant to this Consent. The report shall be submitted to Gregory G. Faragasso, Esq., Division of Enforcement, U.S. Securities and Exchange Commission,

100 F Street, N.E., Washington, D.C. 20549 or as directed in writing by the Commission Staff.

B. Beginning in June 2009, Defendant shall meet at least quarterly with the Commission staff to discuss its progress with respect to its obligations pursuant to this Consent. Such quarterly meetings shall continue until June 2010.

C. The reporting or meeting deadlines set forth above may be amended or modified with written permission from the Commission staff.

4. Defendant agrees that, upon motion of the Commission, the Court shall determine whether it is appropriate to order a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount of the civil penalty. Defendant further agrees that in connection with the Commission's motion for civil penalties, and at any hearing held on such a motion: (a) Defendant may not challenge the validity of the Judgment, this Consent, or its related Undertakings; (b) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil

Procedure. In connection with the Commission's motion for civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

5. Defendant agrees that it shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

6. Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

7. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

8. Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

9. Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

10. Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11. Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide to counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

12. Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a

13        SEC v. RBC Capital Markets Corp.
Consent of RBC

statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the Complaint in this action.

13. Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

14. Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's

fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

15. In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant: (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

16. Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

17. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

15 SEC v. RBC Capital Markets Corp.
Consent of RBC

**RBC CAPITAL MARKETS CORP.**

By: *Richard T. Chase*
Richard T. Chase, Esq.
Managing Director & General Counsel


On *May 14*, 200*9*, *Richard T. Chase*, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of *RBC Capital Markets Corp* as its *Managing Director*

*Judith Tompkins*
Notary Public
Commission expires:

JUDITH TOMPKINS
Notary Public, State of New York
No. 01TO5053749
Qualified in New York County
Commission Expires March 21, 2010

Approved as to form:

*[signature]*
George S. Canellos, Esq.
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Attorney for RBC Capital Markets Corp.