UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONSTER WORLDWIDE, INC.,<br><br>                    Plaintiff,<br><br>                    v.<br><br>RBC CAPITAL MARKETS CORPORATION,<br><br>                  Defendant. | No. 09-CV-4542 (DAB) |

## **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant RBC Capital Markets Corp. ("RBCCM") respectfully submits this reply in support of its motion to dismiss the Second Amended Complaint (the "SAC") of Monster Worldwide, Inc.

## **ARGUMENT**

Defendant's motion to dismiss criticized the Complaint for relying on boilerplate statements in regulatory settlements rather than on any ***Monster-specific*** allegations. Plaintiff's opposition responds to this fatal deficiency by quoting verbatim dozens of passages from the regulatory complaints and settlement documents. *See* Opposition, at 5-7, 9-11, 22. Monster was not a party to those proceedings and they shed absolutely no light on whether Monster was defrauded by RBCCM. This is particularly true given that the settlements specifically excluded non-retail RBCCM clients like Monster. In any event, merely parroting generic misstatements alleged in the regulatory complaints does not satisfy the demanding requirements of Rule 9(b) and the PSLRA.

**I.     PLAINTIFF'S FRAUD CLAIM UNDER SECTION 10(B) AND RULE 10B-5 SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

**A.     Plaintiff Has Not Pled Any Misrepresentation with Particularity**

Monster has not pled the requisite specificity in its fraud allegations, and its opposition only confirms the lack of particularity. For example, Monster points to paragraphs 100-104, which it claims "specify the statements that Plaintiff contends were fraudulent." Opposition, at 8. However, these paragraphs contain only the most generic allegations that RBCCM assured Monster that the SLARS "remained safe and liquid." Again, these allegations merely crib the general misrepresentations alleged in the regulatory settlements. Also, rather than identify where the fraud actually took place, Monster points to its allegation that "the principle place of business of both parties is New York, NY." Opposition, at 8 (citing SAC, ¶¶ 6-7). However, this is plainly not an allegation that the conduct took place in New York, since Monster has not alleged that RBCCM — a subsidiary of a Canadian bank, SAC, ¶ 7 — conducts business solely in New York, or that John Piemonte worked there (he did not). In addition, Monster does not identify when the allegedly fraudulent statements were made other than to point to a reference in the SAC that "at all times" during a seven-month period RBCCM touted the liquidity of ARS. Opposition, at 8; SAC, ¶ 28.

RBCCM contends that none of its representatives *ever* defrauded Monster in any manner. The law requires plaintiff to allege specifically the "who, what, where, when, and why" of the alleged statements it contends were fraudulent. *ATSI Commc'ns Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). It is only with that level of specificity that RBCCM can meaningfully defend itself against these baseless fraud charges.

### B. Plaintiff Has Not Pleaded Scienter with Particularity

Monster has not alleged anything close to a "strong inference of scienter," as required under the PSLRA. Monster claims that RBCCM had a financial motive to commit fraud because it "is paid by the issuer based upon the number of SLARS it sold" and that SLARS were "lucrative." Opposition, at 9, citing to SAC, ¶¶ 21, 37-38. These boilerplate motive allegations are exactly the type that courts regularly reject, as they exist in virtually every securities fraud case. *E.g.*, *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) ("Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders . . . ."); *Vogel v. Sands Bros. & Co.*, 126 F. Supp. 2d 730, 739 (S.D.N.Y. 2001).

Moreover, the SAC paints a compelling inference that no scienter exists. For example, Monster alleges that, from "at least as early as August 2007 and up until February 12, 2008," RBCCM *increased* its own purchases of auction rate securities, ultimately acquiring billions of dollars of those securities for its proprietary account. (Opposition, at 9; SAC, ¶¶ 38, 46). This is the opposite fact pattern from which plaintiffs typically seek to draw an inference of scienter (which is often based on insider selling). *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) (holding that defendants' increase of their holdings was "wholly inconsistent with fraudulent intent").

### C. Plaintiff's Allegations Fail to Establish Loss Causation

Monster is incorrect that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), is limited to fraud-on-the-market cases. *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007) ("a plaintiff is unlikely to recover when 'the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other

investors'") (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)).  Loss causation is an element of every Section 10(b) claim, as confirmed by the PSLRA.  15 U.S.C. § 78u-4(b)(4) (loss causation must be established "[i]n any private action" under the 1934 Act).

Monster's only attempt to satisfy its burden of alleging loss causation is to claim that it would not have bought the securities "but for" the alleged misrepresentations.  Opposition, at 11-12.  This exact type of allegation repeatedly has been held to establish only transaction causation, not loss causation.  *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000); *In re Vivendi Universal Sec. Litig.*, 2009 WL 1066254 (S.D.N.Y. April 21, 2009).

### D. Any Alleged Misrepresentations Were Immaterial under the Bespeaks Caution Doctrine

Contrary to Monster's suggestion (Opposition, at 12-13), *Halperin v. eBanker USA.COM*, 295 F.3d 352, 357 (2d Cir. 2002), did not hold that the "bespeaks caution" doctrine applies only to misrepresentations and omissions in an offering document.  Indeed, the Second Circuit has dismissed a claim under this doctrine where "oral representations . . . were neutralized by . . . cautionary statements" made in offering documentation.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 98 (2d Cir. 2004).

## II. PLAINTIFF'S SECTION 12(A)(2) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Section 12(a)(2) Does Not Apply to Government Securities

Monster cites cases applying Section 4(2), which covers exemptions from the registration requirement in Section 5 of the Securities Act of 1933.  Opposition, at 14-15 (citing, inter alia, *Sorrell v. SEC*, 679 F.2d 1323, 1326 (9th Cir. 1982), and *SEC v. Ralston*

*Purina Co.*, 346 U.S. 119 (1953)). These cases have nothing to do with Section 12(a)(2), which expressly carves out securities issued by "any public instrumentality," and which is not concerned with registration. By acknowledging that all of its ARS were issued by public instrumentalities such as the "State of North Carolina Education Assistance Authority" — as opposed, for example, to ARS issued by private closed-end trusts — Monster has admitted that it cannot rely on Section 12(a)(2).[1]

**B.     There is No Section 12(a)(2) Liability for Private Secondary Market Transactions for which There Was No Obligation to Deliver a Prospectus**

Monster cannot support its claim that Section 12(a)(2) covers "immediate aftermarket sales and other redistributions of securities." Opposition, at 13. The *Feiner* and *Brosius* cases held only that Section 12(a)(2) covers secondary transactions occurring within a 25-day period of mandatory prospectus delivery following an IPO. *Feiner v. SS&C Tech., Inc.*, 47 F. Supp. 2d 250, 252 (D. Conn. 1999); *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 143 (D.N.J. 1999). This holding is not good law, *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 693 (S.D.N.Y. 2000), but even if it were, the SAC does not allege any purchases within 25 days of an initial offering. SAC, ¶ 55. Monster's "aftermarket" purchases do not support a Section 12 claim. *In re Fuwei Films Sec. Litig.*, --- F.3d ---, No.

---

[1]     Monster's governmental immunity cases (Opposition, at 15) are irrelevant because, rather than establishing a defense related to government-issued securities, Section 12 carves them out entirely. 15 U.S.C. § 77c(a)(2); *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 571 (1995). Likewise, not only are the two SEC no-action letters from 1974 and 1994 cited by Monster (Opposition, at 14) not binding authority, *Gryl ex rel. Shire Pharms. Group Plc v. Shire Pharms. Group Plc*, 298 F.3d 136, 145 (2d Cir. 2002) (citing cases), the circumstances discussed therein are utterly irrelevant. The *J.P. Morgan Securities Inc.* no-action letter dealt with Rule 2a-7 under the Investment Company Act of 1940, not Section 12 of the Securities Act of 1933. More importantly, the firm in question "recognize[d] that the Notes [were] not Government Securities" for purposes of that Act, and the SEC therefore declined to apply the terms of the government securities exception in question. Similarly, *Small Business Administration Guaranteed Loans* stated that there was no actual government guarantee, meaning the government-guaranteed-securities exception did not apply.

07-CV-9416, 2009 WL 2005291, at *19 (S.D.N.Y. July 10, 2009) (holding that Section 12(a)(2) does not apply to "the so-called 'aftermarket'").

Monster asserts that "RBC had an affirmative obligation to deliver a prospectus to Plaintiff." Opposition, at 14. Tellingly, it does not support this with any legal citation or reference to the SAC, because there is no such allegation (or requirement). Moreover, contrary to the Opposition, the Motion to Dismiss did not rely on the *Yung* and *Gotham Holdings* cases for the proposition that RBCCM had no obligation to deliver a prospectus. *Id.* Rather, those cases provide that where, as here, a plaintiff fails to plead such an obligation, Section 12(a)(2) does not apply. Motion to Dismiss, at 16.

C.  **Section 12(a)(2) Applies Only to Statements Made In Or Relating to a Prospectus**

Despite relying on Section 12(a)(2), Monster concedes that "it [is not] suing RBC for misrepresentations contained in any of the Official Statements relating to the offerings of securities." Opposition at 12. Monster attempts to get around this problem by asserting that it "allege[d] that th[e] oral false statements ***related to public offerings*** of SLARS made by means of prospectuses known as Forms G-36 Official Statements." Opposition, at 13 (citing SAC, ¶¶ 90, 92) (emphasis added). This is a convoluted reading of the allegations actually contained in the SAC, but in any event it is insufficient to state a claim under Section 12(a)(2), which requires that any alleged oral misrepresentation relate to a "prospectus." Motion to Dismiss, at 16-17; *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442 (S.D.N.Y. 2008) ("Since the alleged false statements were not directly related to the prospectus, there can be no claim under § 12(a)(2)."); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 567-68 (1995) ("The Courts of Appeals agree that the phrase 'oral communication' [in

Section 12(a)(2)] is restricted to oral communications that relate to a prospectus.") (citing cases). Monster has not and cannot establish how any statement by RBCCM is related to any Official Statements, particularly because some of those Official Statements are dated seven years prior to any alleged interaction between Monster and RBCCM. SAC, ¶ 55.

The case of *In re American Bank Note Holographics Securities Litigation*, cited by Monster (Opposition, at 13), is not instructive. The plaintiff there alleged misrepresentations that were incorporated into an issuer's registration statement, and the case focused on whether the defendants were "sellers" under Section 12. 93 F. Supp. 2d 424, 431-33, 437-39 (S.D.N.Y. 2000). Likewise, *In re Fine Host Corp. Securities Litigation*, which is cited (but misquoted) by Monster (Opposition, at 13-14), does not help it. That case looked at whether Section 11 requires privity, and it noted that Section 12 applies only to plaintiffs who "purchased their shares directly from a seller in a public offering." 25 F. Supp. 2d 61, 67 (D. Conn. 1998). Neither of these cases held that a plaintiff can state a Section 12 claim without alleging that a misstatement or omission relates to a prospectus. Monster has not addressed this crucial question, because there is no plausible argument that the representations and omissions alleged in the SAC related in any way to a prospectus.

### III. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A. The Negligent Misrepresentation Claim Is Not Pleaded with Particularity

##### 1. The Martin Act Preempts Plaintiff's Negligent Misrepresentation Claim

Monster cites three cases for the proposition that negligent misrepresentation claims are not preempted by the Martin Act, N.Y. GEN. BUS. L., Art. 23-A. Opposition, at 17.

However, the "majority position" under New York law is that "negligent misrepresentation claims made in connection with the purchase or sale of securities are preempted by the Martin Act . . . ." Motion to Dismiss, at 20 (citation omitted); *see also Marcus v. Frome*, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004) (collecting cases). Indeed, two of the cases on which Monster relies have been roundly rejected by this Court, which stated that "[b]oth *Scalp & Blade* and *Cromer Finance* stand as solitary islands in a stream of contrary opinion. . . ." *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 U.S. Dist. LEXIS 15206, at *13 (S.D.N.Y. 2003).

### 2. Because Plaintiff Does Not Plead Facts Separate from Its Fraud Claim, It Has Not Pleaded Negligent Misrepresentation Claim with Particularity

Monster cites three cases from the Eastern District of New York in support of its argument that its negligent misrepresentation claim need not be alleged with particularity. Opposition, at 18. However, Monster cites no case from the Southern District of New York, a concession to the fact that most courts in this District apply the heightened standard of Rule 9(b) to such claims. Motion to Dismiss, at 21 (citing cases).

### B. Plaintiff Fails to State a Contract Claim

#### 1. Consideration of the Documents Underlying Monster's Contract Claims Does Not Require Conversion into a Motion for Summary Judgment

Monster argues that consideration of the NYAG Assurance and SEC Consent would require conversion of the Motion to Dismiss into a motion for summary judgment. Opposition, at 18-20. It is well-settled, however, that this Court can consider documents that are integral to a complaint on a motion to dismiss — a rule acknowledged by one of the

cases on which Monster relies, *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006). Motion to Dismiss, at 3, n.1 (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). The NYAG Assurance and the SEC Consent are the "contracts" of which Monster claims to be an intended beneficiary, and which it alleges RBCCM breached. SAC, ¶¶ 118-29. These documents obviously are integral to the SAC, as evidenced by Monster's extensive (over-)reliance on them in drafting the complaint. Indeed, the SAC and Opposition both rely more on these regulatory settlements than on actual communications between Monster and RBCCM. *See, e.g.*, Opposition, at 2, 6-7, 20, 23-24; SAC ¶¶ 58-87.

### 2. Any Contract Was Not Intended for Monster's Benefit, Because It Expressly Omitted Monster from the Repurchase

Monster asserts that it is an intended third-party beneficiary of the NYAG Assurance and the SEC Consent. Opposition, at 21-23. New York law requires that "the parties' intent to benefit a third-party be shown on the face of the contract." Motion to Dismiss, at 22 (quoting *Synovus Bank v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007)). Rather than showing such an intent, Monster ignores the fact that the NYAG Assurance and the SEC Consent provide the very opposite. *See* Murphy Decl., Exh. A, at 14 ("This Assurance shall not confer any rights upon persons or entities who are not a party to this Assurance."); Exh. B, at ¶ 3(VII) ("Defendant [RBCCM] is under no obligation to offer to purchase Eligible ARS from Institutional Customers.").

### 3. Any Contractual Obligation, By Its Terms, Could Not Be Enforced Before December 2009

Monster claims that, in moving to dismiss the SAC, RBCCM has taken the position that "RBC can sit on its hands and do nothing" regarding its best efforts obligation. Opposition, at 23-24. However, Monster has made no allegations whatsoever regarding RBCCM's efforts under the NYAG Assurance and SEC Consent — let alone any allegations regarding how such efforts fall short of its obligation. Monster does not know what efforts RBCCM has taken, and in any event RBCCM's best efforts obligation relates to all institutional investors, not to any particular investor like Monster. Regardless, Monster cannot evade the simple fact that, because the obligation is to use best efforts to provide liquidity solutions by the end of 2009, even if Monster were entitled to enforce such an obligation, it would be nonsensical to allow it to do so before January 2010.

### CONCLUSION

For the reasons stated in the Motion to Dismiss and above, this Court should dismiss all claims in the SAC with prejudice.

Dated: September 11, 2009
New York, New York

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Sean M. Murphy
Sean M. Murphy (SM 8717)
Joshua R. Pater (JP 1302)
One Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Email: smurphy@milbank.com
*Attorneys for Defendant RBC Capital Markets Corp.*